IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

ANHAM FZCO, LLC,

    Plaintiff,

v.

EXELIS SYSTEMS CORPORATION
f/k/a ITT SYSTEMS CORPORATION,

    Defendant.

## COMPLAINT

Plaintiff, ANHAM FZCO, LLC ("Plaintiff"), by and through its attorneys, Garlin Driscoll LLC, for its Complaint against the Defendant, EXELIS SYSTEMS CORPORATION f/k/a ITT SYSTEMS CORPORATION ("EXELIS"), states and alleges as follows:

### THE PARTIES

1.  Plaintiff ANHAM FZCO, LLC ("ANHAM") is a leading contractor firm that specializes in providing local operations and management support ("O&M") services for large government and investment projects in the Middle East, North Africa and around the globe. ANHAM is a corporation formed under the laws of United Arab Emirates, with its principal place of business in Dubai, UAE.

2.  Defendant EXELIS is the former defense contracting arm of ITT Systems Corporation, which was spun off as a separate, publically traded company in January, 2011. EXELIS supplies a variety of services under contracts with the U.S. military and governmental

agencies around the globe.  EXELIS is incorporated under Delaware law with its principal place of business in Colorado Springs, Colorado.

## JURISDICTION AND VENUE

3.      The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs, and ANHAM is the citizen of a foreign state and has a principal place of business in the United States in a state other than the states in which EXELIS is incorporated and has its principal place of business.

4.      Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(a)(3) because the Defendant is a citizen of Colorado and subject to personal jurisdiction in this judicial district.

## FACTS

5.      This dispute arises out of two subcontract agreements between ANHAM and EXELIS on EXELIS's prime contracts with the U.S. Government for O&M and Warehouse services at various facilities in northern and southern Afghanistan ("Subcontracts").

6.      On July 26, 2010, the U.S. Government awarded both prime contracts to EXELIS, based chiefly on the low cost of EXELIS's bids.  Approximately 60 days before EXELIS was to commence performance, EXELIS asked ANHAM if it would perform the contracts as a subcontractor to EXELIS.  ANHAM, together with Afghan Fleet and Group Services ("AFGS"), had previously provided the U.S. Government with O&M and Warehouse services while the U.S. Government conducted the prime contract solicitation process.  ANHAM and AFGS had performed these services effectively and with good performance reviews.

7.      ANHAM agreed to start performing the prime contracts while it negotiated the terms of the Subcontracts with EXELIS.  Because time was short, ANHAM mobilized

2

approximately 3,000 employees and began performing pursuant to Notices to Proceed issued by EXELIS.

8. The subcontract negotiations between ANHAM and EXELIS involved a number of persons on both sides, and took place in-person at EXELIS's Colorado Springs offices and via emails exchanges and telephone calls.

9. The subcontract negotiations were difficult from the start. EXELIS repeatedly insisted that ANHAM reduce its prices, apparently because EXELIS had substantially underbid the prime contracts and anticipated losing money on the prime contracts under any scenario.

10. EXELIS wanted the Subcontracts to state that it could employ ANHAM's employees once the Subcontracts terminated or expired. ANHAM refused to allow this, and the final versions of the Subcontracts expressly prohibit EXELIS from employing ANHAM's employees for a period of 12 months after the subcontracts terminated or expired.

11. The most difficult issues in the subcontract negotiations arose from EXELIS's insistence that it have the contractual right to terminate the Subcontracts for "convenience" apart from whether the U.S. Government terminated its prime contracts with EXELIS, and EXELIS's insistence that it not be obligated to utilize ANHAM for any option years on the prime contracts. ANHAM did not want these provisions because they would allow EXELIS to terminate the Subcontracts after the base year when the Subcontracts were not particularly profitable due to substantial mobilization and start-up costs. EXELIS insisted that it was its corporate policy to maintain the flexibility that these provisions provided for in the Subcontracts.

12. At one point in the subcontract negotiations, ANHAM decided not to continue in light of EXELIS's refusal to concede on these two issues. ANHAM's president, Huda Farouki, verbally informed EXELIS's president, Michael Gulino, of this decision, but advised him that

ANHAM would continue to perform for EXELIS while EXELIS transitioned to another subcontractor. At the time, Mr. Gulino assured Mr. Farouki that EXELIS had every intention of using ANHAM for the prime contract option years so long as ANHAM was performing well.

13. Following these conversations, EXELIS agreed to revise the Subcontracts to provide that EXELIS would evaluate ANHAM's performance prior to the end of the base-year period and, "pending a favorable evaluation and award by EXELIS's customer of the first Option Year and any subsequent Option Years, ANHAM may continue as a member of the EXELIS team in a similar role." EXELIS also agreed to revise the Subcontracts to provide that if EXELIS terminated the Subcontracts for convenience, then it would reimburse ANHAM for most of the non-depreciated equipment that ANHAM had purchased for the work.

14. Relying on these revisions to the Subcontracts' terms and Mr. Gulino's verbal assurances that EXELIS intended to use ANHAM for the option years so long as ANHAM was performing well, ANHAM executed the Subcontracts on October 4, 2010, effective September 9, 2010.

15. Following the execution of the Subcontracts, ANHAM completed its recruitment and mobilization efforts and was fully operational in time for the base year start dates specified in the Subcontracts.

16. One day before the November 10, 2010 start date for providing for O&M and Warehouse services at various facilities in southern Afghanistan, and one day before the November 20, 2010 start date for providing O&M and Warehouse services at facilities in northern Afghanistan, EXELIS notified ANHAM that these start dates were delayed until December 2, which resulted in a reduction of the agreed-on subcontract amounts. EXELIS did not explain why the performance start dates were delayed. Because ANHAM had already

mobilized its workers and equipment for the earlier start dates, it had no way of recouping its operations costs for this delay period. Thus, ANHAM submitted to EXELIS a formal Request for Equitable Adjustment ("REA") requesting adjustments to the subcontract amounts totaling $1,223,786.37 in the South and $108,642.87 in the North. To date, EXELIS has not paid the full amount of these REAs.

17. Pursuant to the terms of the Subcontracts, ANHAM sent monthly invoices to EXELIS for each facility covered, based on the total fixed price of the Subcontracts. Beginning in April, 2011, EXELIS began sending adjustment notices in response to certain ANHAM invoices, indicating that the amounts billed were being reduced because, according to EXELIS, ANHAM either had not serviced the facilities on the invoice or had not serviced the facilities the number of times indicated. The amount of EXELIS's invoice adjustments unilaterally withheld by EXELIS totaled $3,533,765.

18. ANHAM objected to these unilateral reductions both because the Subcontracts were for fixed amounts and therefore were not subject to adjustment based on EXELIS's analysis of what services were specifically provided at each facility, and because ANHAM's own investigation showed that EXELIS's assertions regarding the scope of services provided by ANHAM were incorrect or beyond ANHAM's control due to lack of security in the area. ANHAM informed EXELIS that the unilateral billing adjustments were improper and unjustified. However, EXELIS never responded to ANHAM's letters. To date, all of EXELIS's unilateral reductions still have not been resolved.

19. In June 2011, EXELIS notified ANHAM that it would not be using ANHAM for the option years on the prime contracts. ANHAM performed well during the base year of the

Subcontracts, and ANHAM is informed and believes that EXELIS's decision not to use ANHAM for the option years was based solely on cost.

20. ANHAM's last date performing under the Subcontracts was July 29, 2011. As of that date, EXELIS still owed ANHAM a substantial past due balance on the subcontracts, including $1,244,899 in unresolved requests for equitable adjustment by ANHAM and $3,533,765 in unresolved billing adjustments unilaterally made by EXELIS.

21. ANHAM has subsequently made good faith efforts to collect the entire past due balance owed it by EXELIS pursuant to the Subcontracts. Although EXELIS has made some payments, as of the filing of this Complaint EXELIS still owes $1,756,948.29 to ANHAM.

## COUNT I

### BREACH OF CONTRACT

22. Plaintiff incorporates by reference Paragraphs 1 through 21 of this Complaint, inclusive, as if fully set forth herein.

23. ANHAM performed all of its obligations pursuant to the terms of the Subcontracts in a timely and professional manner.

24. Pursuant to the payment terms in the Subcontracts, EXELIS was required to make payment "Net 45 days after receipt of an acceptable invoice." ANHAM submitted proper and timely monthly invoices, which divided the total firm-fixed-price amounts for O&M services and Warehouse services across the various facilities services and across the various sites. EXELIS failed to pay the full amounts of these invoices in a timely manner.

25. During the course of ANHAM's performance of the Subcontracts, EXELIS made more than $3.5 million in unsubstantiated and improper reductions to the amounts properly invoiced by ANHAM.

26. ANHAM incurred substantial, uncompensated costs as a result of EXELIS's last-minute delay of the start dates for the Subcontracts. ANHAM submitted REAs to EXELIS, seeking adjustments to the subcontract amounts to recover these uncompensated costs. EXELIS has failed to accept and pay outstanding REAs totaling $1,263,809.17.

27. EXELIS's failure to make timely payment of ANHAM's invoices, failure to accept and pay the outstanding REAs and insistence on withholding payment for unsubstantiated, unilateral invoice reductions are material breaches of the Subcontracts.

28. As a direct and proximate result of EXELIS's material breaches of the Subcontracts, ANHAM has incurred substantial damages in an amount to be established at trial.

## COUNT II

### UNJUST ENRICHMENT

29. Plaintiff incorporates by reference Paragraphs 1 through 28 of this Complaint, inclusive, as if fully set forth herein.

30. Following the execution of the Subcontracts, ANHAM completed its recruitment and mobilization of approximately 3,000 employees and was fully operational in time to begin performing O&M and Warehouse services by the start dates specified in the Subcontracts.

31. ANHAM incurred substantial costs in recruiting and mobilizing its employees and equipment in order to be in a position to perform by the start dates specified in the Subcontracts.

32. After EXELIS notified ANHAM that the Subcontract start dates were delayed until December 2, 2010, ANHAM continued to incur costs to maintain the workforce and equipment in place for EXELIS's benefit until the delayed start dates. However, ANHAM was not able to submit invoices for these costs because they were incurred prior to the delayed start dates.

33. ANHAM submitted REAs to EXELIS seeking adjustments to the subcontract amounts to recover these uncompensated costs, but EXELIS has failed to accept and pay outstanding REAs totaling $1,263,809.17.

34. Under the circumstances, it would be unjust for EXELIS to retain the benefit of ANHAM's costs to maintain the workforce and equipment in place pending the delayed Subcontract start dates, without compensating ANHAM for those costs.

## COUNT III

### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

35. Plaintiff incorporates by reference Paragraphs 1 through 34 of this Complaint, inclusive, as if fully set forth herein.

36. During the negotiation of the Subcontracts, EXELIS's president gave verbal assurances to ANHAM's president that EXELIS had every intention of using ANHAM for the option years on the prime contracts if ANHAM was performing well.

37. The Subcontracts qualify EXELIS's option to decide whether to continue using ANHAM's services based on ANHAM's performance during the phase-in period and base year. EXELIS agreed to evaluate ANHAM's performance during the phase-in period and base year and continue using ANHAM's services for the option years, so long as ANHAM performed well.

38. Based on the assurances of EXELIS's president and the negotiated terms of the Subcontracts, ANHAM reasonably expected that EXELIS would continue to use ANHAM's services for the option years so long as ANHAM performed well.

39. Despite ANHAM's good and timely performance during the phase-in and base year, EXELIS notified ANHAM in June 2011 that it would not be using ANHAM's services for the option years.

40. EXELIS's decision not to use ANHAM's services for the options years was contrary to the intentions and reasonable expectations of the parties at the time they entered into the Subcontracts, and was not made in good faith.

41. Alternatively, if EXELIS's decision not to use ANHAM's services for the option years is deemed a termination for convenience, then EXELIS's decision was in violation of federal common law requiring that contractual terminations for convenience be made in good faith.

42. EXELIS's decision not to use ANHAM's services for the option years was a breach of the covenant of good faith and fair dealing implied in the Subcontracts pursuant to Colorado as well as federal common law regarding contractual terminations for convenience.

43. As a direct and proximate result of EXELIS's breach of the covenant of good faith and fair dealing implied in the Subcontracts and required by federal common law of contracts, ANHAM has incurred substantial damages in an amount to be established at trial.

## COUNT IV

### FRAUDULENT INDUCEMENT OF CONTRACT

44. Plaintiff incorporates by reference Paragraphs 1 through 43 of this Complaint, inclusive, as if fully set forth herein.

45. EXELIS's president made verbal representations and assurances to ANHAM's president during the subcontract negotiations that EXELIS had every intention of using ANHAM for the option years if ANHAM was performing well.

46. The verbal representations and assurances of EXELIS's president were material to ANHAM's decision to enter into the Subcontracts. ANHAM made it clear that it would not

proceed with the Subcontracts if EXELIS might not use it for the option years even if ANHAM had performed well in the base year.

47. ANHAM's reliance on the representations and assurances of EXELIS's president was reasonable.

48. ANHAM's reasonable reliance on the representations and assurances of EXELIS's president resulted in substantial damage to ANHAM, in an amount to be established at trial.

## **PRAYER FOR RELIEF**

*WHEREFORE*, Plaintiff prays that judgment enter as follows:

A. On Count I, judgment in Plaintiff's favor and against Defendant for actual and consequential damages for breach of contract, in an amount to be established at trial.

B. On Count II, judgment in Plaintiff's favor and against Defendant in the amount of the unreimbursed costs incurred by ANHAM maintaining its workforce and equipment in place for EXELIS's benefit until the delayed start dates of the Subcontracts.

C. On Count III, judgment in Plaintiff's favor and against Defendant for actual and consequential damages for breach of the implied covenant of good faith and fair dealing, in an amount to be established at trial.

D. On Count IV, judgment in Plaintiff's favor and against Defendant for actual, consequential and punitive damages for fraudulent inducement of contract, in an amount to be established at trial.

E. On All Counts:

    a. Attorney's fees.

    b. Costs.

      c.      Pre and post-judgment interest.

      d.      Any and all such further relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all issues.

Date: August 29, 2013                        Respectfully submitted,

By:    /s/ "David J. Driscoll
        David J. Driscoll
        Kenneth R. Morris
        GARLIN DRISCOLL LLC
        245 Century Circle, Suite 101
        Louisville, CO 80027
        tel. (303) 926-4222
        fax (303) 926-4224
        ddriscoll@garlindriscoll.com
        kmorris@garlindriscoll.com
        *Attorneys for Plaintiff*

<u>Plaintiff's Address</u>
DAFZA East Wing, E4-A, Suite No. 608
Dubai, United Arab Emirates